UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELENA MCMAHON,<br><br>    Plaintiff,<br><br>    v.<br><br>SAN FRANCISCO POLICE DEPARTMENT, et al.,<br><br>    Defendants. | Case No. 17-cv-00174-WHO<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff Helena McMahon refused to leave her parked car after being instructed to do so by the City and County of San Francisco Parking Control Officers and a San Francisco Police Department officer, Mikayla Connell. Connell and her partner then forcibly removed McMahon from her vehicle and used a control hold technique to detain her while her car was towed. McMahon alleges that she was unlawfully detained and subjected to excessive force by defendants San Francisco Police Department ("SFPD"), City and County of San Francisco ("CCSF"), and Connell. But the undisputed facts establish that defendants detained McMahon because she was interfering with a lawful action by a Parking Enforcement Officer and did not use unreasonable force in doing so. I GRANT defendants' motion for summary judgment for all causes of action.

## BACKGROUND

On May 31, 2016, McMahon's neighbor warned McMahon that her car was being towed. McMahon Decl. ¶ 1(Dkt. No. 30). McMahon rushed outside and asked the two parking control officers (the "PCOs") why her legally parked car was being towed. McMahon Depo., Exh. C at 65:17-25 (Dkt. No. 25-3). The PCOs informed her she had eight unpaid parking tickets. *Id.* at 46:10. McMahon continued trying to convince the PCOs not to tow her car, and eventually

entered her car to prevent it from being towed. *Id.* at 67:24-26. The PCOs asked her to get out of the car. McMahon refused, pleading with them not to tow her car. *Id.* at 68:12-15.

After some time, the PCOs informed McMahon that if she did not remove herself from the car, they would call the police. *Id.* at 69:3-6. McMahon did not believe the PCOs and remained in the car. *Id.* at 70:6-10. Shortly thereafter, Connell and her partner arrived at the scene. Connell Decl. ¶ 3 (Dkt. No. 25-2). After speaking with the PCOs, Connell requested multiple times that McMahon get out of the car. *Id.* ¶ 5; McMahon Depo. at 77:14-20. McMahon refused. McMahon Depo. at 78:2-5. Connell warned McMahon that she would be physically removed from the car unless she left voluntarily. Connell Decl. ¶ 5. She did not leave the car. Connell and her partner then each grabbed one of McMahon's arms and, using a control hold technique, removed her from the car. McMahon Depo. at 92:16-17; Connell Decl. ¶ 5. Connell and her partner restrained McMahon until the car was successfully towed. McMahon Depo. at 93:9-11; Connell Decl. ¶ 5.

After McMahon was released, she returned to her office building without requesting medical attention from the officers. McMahon Decl. ¶ 23. However, the next day, she received medical attention for strained ligaments to her wrist and neck from her regular physician. *Id.* ¶ 24. McMahon took pictures that show visible injuries. Exh. C. at 68-80.

**LEGAL STANDARD**

A party is entitled to summary judgment where it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it could reasonably be resolved in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material where it could affect the outcome of the case. *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the movant has made this showing, the burden shifts to the nonmoving party to identify specific evidence showing that a material factual issue remains for trial. *Id.* The nonmoving party may not rest on mere

2

allegations or denials from its pleadings, but must "cit[e] to particular parts of materials in the record" demonstrating the presence of a material factual dispute. Fed. R. Civ. P. 56(c)(1)(A). The nonmoving party need not show that the issue will be conclusively resolved in its favor. *See Anderson*, 477 U.S. at 248-49. All that is required is the identification of sufficient evidence to create a genuine dispute of material fact, thereby "requir[ing] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (internal quotation marks omitted). If the nonmoving party cannot produce such evidence, the movant "is entitled to . . . judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323.

On summary judgment, the court draws all reasonable factual inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise a genuine dispute and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738-39 (9th Cir. 1979).

**DISCUSSION**

Defendants seek summary judgment on all of McMahon's claims because there is no material fact in dispute to contest that Connell's conduct was objectively reasonable. They assert that even if the force was objectively unreasonable in violation of the Fourth Amendment, Connell is entitled to qualified immunity because a reasonable officer would not have known at the time of the incident that the conduct violated clearly established law. I agree with both arguments.

**I.    42 U.S.C. § 1983 (FIRST AND SECOND CLAIMS)**

McMahon alleges a violation of her Fourth Amendment rights under 42 U.S.C. § 1983 against defendants. A successful section 1983 claim must establish: "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988) (citations omitted). McMahon cannot establish the second prong of a 1983 claim.

3

### A. Fourth Amendment Violation

"Under the Fourth Amendment, law enforcement may use objectively reasonable force to carry out such seizures; as in the unlawful arrest analysis, this objective reasonableness is determined by an assessment of the totality of the circumstances." *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (internal quotation marks omitted). To determine whether an officer's use of force was reasonable, courts must balance the nature and quality of the intrusion on a person's liberty with the countervailing governmental interests at stake. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007) (internal quotations and citations omitted). This balancing act requires courts to "assess the quantum of force used" and then "measure the governmental interests at stake" by considering the following three factors: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

McMahon's interaction with the officers occurred because she entered her car to prevent the PCOs from towing it. The PCOs and the officers responding to the scene repeatedly asked her to remove herself from the car so that it could be lawfully towed. In light of her refusal to do so, it was reasonable for the officers to believe that in order for the PCOs to fulfill their duties, they would need to remove her from the car. When Connell and her partner removed McMahon from her car, they did so using a control hold technique, which is on the lowest end of the allowable force spectrum.

The reasonableness of a particular use of force must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, [] violates the Fourth Amendment." *Id.* at 396-97 (internal quotation marks and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.*

Defendants satisfy the three *Graham* factors to show that Connell's conduct was reasonable. Despite McMahon's argument that there is no governmental interest at stake, CCSF and SFPD have a

4

legitimate interest in ensuring that public officers are not impeded from completing their official duties. While McMahon's obstinance did not pose a serious threat to public safety, her refusal to leave the car violated section 148 of the California Penal Code and directly conflicts with this governmental interest. *See In re Muhammed C.*, 95 Cal. App. 4th 1325, 1329 ("The legal elements of a violation [of section 148] . . . are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties."). And, the nature and quality of the force employed by Connell was at the lowest end of the spectrum. She did not threaten or use deadly force and did not deliver physical blows or cuts. The force consisted only of a control hold, the least grave physical force police officers are allowed to deploy. Bradley Decl. at 5 (Dkt. No. 5). *Compare Eberle v. City of Anaheim*, 901 F.2d 814, 820 (1990) (reasonable as a matter of law to use a painful "finger control hold" to remove belligerent spectator from arena), *with Hammer v. Gross*, 932 F.2d 842, 846 (1991) (unreasonable to forcibly extract blood against the will of arrestee who indicates a willingness to undergo alternative form of alcohol testing).

In short, defendants did not violate McMahon's Fourth Amendment rights.

**B.    Qualified Immunity**

The doctrine of qualified immunity protects government officers who do not knowingly violate the law. *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994). Even if McMahon had demonstrated a Fourth Amendment violation, Connell would be entitled to qualified immunity unless a reasonable officer would have known at the time of the incident that her conduct violated clearly established law.

Qualified immunity requires a two-part analysis: "1) Was the law governing the official's conduct clearly established? 2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993). This is "an objective standard" that leaves "ample room for mistaken judgments." *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1376 (9th Cir. 1990) (internal citation and quotation marks omitted). It is the plaintiff's "burden to show that the contours of the right were clearly established" at the time of the alleged

misconduct. *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011).

McMahon points to no case establishing that the use of a control hold under similar facts was a violation of the Fourth Amendment. In contrast, defendants cite *Miller v. Clark County,* 340 F.3d 959, 967-68(9th Cir. 2003) to support their position that the use control hold did not violate the Fourth Amendment. In *Miller*, the plaintiff was seriously injured by a police dog but the court did not find excessive force because the force was reasonably necessary in the situation. *Miller* is not analogous, but it does provide context for this case. Viewed in the light most favorable to McMahon, the evidence fails to create a genuine dispute that reasonable officers in this situation would have known at the time of the incident that their conduct violated clearly established law. The officers are entitled to qualified immunity.

### C. CCSF and SFPD Liability

Defendants move for summary judgment as to CCSF and SFPD, arguing that McMahon fails to allege a CCSF or SFPD policy or custom that caused her injury as required by the rule set out in *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). Mot. for Summary Judgment 11 (Dkt. No. 26). McMahon argues that California rejects the application of *Monell* and permits courts to impose liability on counties under the doctrine of *respondeat superior*. Oppo. 19-20 (Dkt. No. 32). As to its federal cause of action, McMahon is incorrect. The *Monell* rule applies to federal causes of actions.

"[A] municipality cannot be held liable under [section] 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). "Rather, the Supreme Court has required a plaintiff seeking to impose liability on a municipality under [section] 1983 to identify a municipal policy or custom that caused the plaintiff's injury." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1232-33 (9th Cir. 2011) (internal quotation marks and citations omitted). For a municipality to be liable, the plaintiff must establish: "(1) that he or she possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy was the moving force behind the constitutional violation." *Miranda v. City of Cornelius*, 429 F.3d 858, 868 (9th Cir. 2005) (internal citations, quotations marks, and

modifications omitted).

McMahon has failed to show the existence of a policy or custom giving rise to municipal liability. Accordingly, defendants' motion for summary judgment for McMahon's section 1983 claim is GRANTED.

## II. ASSAULT AND BATTERY (THIRD CLAIM)

McMahon also contends that Connell is liable for assault and battery. Under California law, a plaintiff alleging an assault-and-battery action against a law enforcement officer must prove unreasonable force as an element of the tort. *See Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2008); *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272-73 (1998). "Claims that police officers used excessive force in the course of . . . [a] seizure of a free citizen are analyzed under the reasonableness standard of the Fourth Amendment." *Munoz v. City of Union City,* 120 Cal. App. 4th 1077, 1102 (2004). For the reasons discussed earlier, Connell's use of force was not unreasonable. Defendants' motion for summary judgment on this claim is GRANTED.

## III. NEGLIGENCE (FOURTH CLAIM)

McMahon also seeks to hold all defendants liable for negligence. Under California law, a plaintiff alleging negligence must prove four elements: (1) duty, (2) breach, (3) causation, and (4) damages. *Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, (2009). McMahon cannot establish that Connell breached a duty to her because, as discussed above, the force that Connell used during the interaction was reasonable. "A police officer in California may use reasonable force to make an arrest, prevent escape or overcome resistance." *Edson*, 63 Cal.App.4th at 1272-73 (citing Cal. Penal Code § 835a). Accordingly, I GRANT defendants' motion for judgment on McMahon's negligence cause of action.

**CONCLUSION**

For the reasons above, the defendants' Motion for Summary Judgment is GRANTED on all causes of action. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: October 12, 2017

William H. Orrick
United States District Judge